STACY MONIZ
47-563 Hua Place
Kaneohe, Hawaii 96744
Tel.: (808) 258-7448
Email: stacymoniz@msn.com

Plaintiff, *PRO SE*

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2014 SEP -4 AM 11:41

F. OTAKE
CLERK

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| STACY MONIZ,<br><br>    Plaintiff,<br><br>vs.<br><br>DAVID J. LUJAN; ANNA B. LUJAN; and DOE DEFENDANTS 1-20<br><br>    Defendants, | Civil No. 14-1-1867-09 KKS<br><br>(Contract Action)<br><br>COMPLAINT; SUMMONS |

COMPLAINT

Plaintiff STACY MONIZ, Pro-Se, for his Complaint against Defendants DAVID J. LUJAN, ANNA B. LUJAN and Doe Defendants 1 through 20, inclusive (collectively referred to as "Defendants") allege and aver as follows:

I. **PARTIES**

1. Plaintiff Stacy Moniz (hereinafter "Plaintiff" or "SM") is and was at all times relevant herein a resident of the State of Hawaii.

2. Defendants David J. Lujan and Anna B. Lujan (hereinafter "Defendants" or "DJL" or "ABL") are and were at all times relevant herein, United States citizens, residents of Guam and are husband and wife. Defendant ABL owns real property located within the City &

RECEIVED
$ 315.00

County of Honolulu.

3. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Doe Defendants 1-20 and therefore sue said Defendants by such fictitious names. Plaintiff will amend its Complaint to allege their true names and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages, as herein alleged, were proximately caused by their conduct. Plaintiff has made good faith and diligent efforts to identify said Defendants, including interviewing individuals with knowledge of the claims herein. Plaintiff is informed and believes and therefore alleges that at all times herein mentioned, Defendants, and each of them, were the agents, servants and employees of each of the other Defendants herein, and were acting with the permission and consent and within the course and scope of said agency and employment.

## II.     VENUE AND JURISDICTION

4. All events described herein, unless otherwise noted, took place in the City and County of Honolulu, State of Hawaii and within the Jurisdiction of the Circuit Court of the First Circuit, State of Hawaii. Both DJL and ABL are subject to the jurisdiction of this Court.

## III.    FACTUAL ALLEGATIONS

5. In or about 2006, DJL sought out Plaintiff and presented to him a proposal to perform paralegal and consulting services for DJL as it related to all issues involving DJL's prior representation of Junior Larry Hillbroom (through Junior's Court Appointed Guardians and personally) in the case of Junior's Father's Estate, i.e., *In the Matter of the Estate of Larry Lee Hillblom*, CNMI Superior Court Civil Action 95-626 and other personal matters for both Defendants DJL and ABL.

6. During and/or prior to 2006, Plaintiff had been performing paralegal and administrative services for DJL's law office on Guam, being the firm of Lujan Aguigui & Perez, LLP.

7. Prior to his engagement by DJL, Plaintiff was already familiar with the facts and circumstances of the Hillblom litigation/matter from numerous discussions with DJL, Barry Israel Esq. (DJL's co-counsel in the Hillblom matters) and his own personal review of documents related to the Hillblom matter that were provided to Plaintiff by DJL and Israel.

8. While already performing duties for LAP, in or around 2007 at DJL's home on Guam, Plaintiff met with DJL and Barry Israel and an agreement was reached between DJL, Barry Israel and Plaintiff, that Plaintiff would be the paralegal/consultant and point of contact for all Hillblom related matters. DJL and Israel told Plaintiff that their estimate of the cost to be incurred for Plaintiff's services would be approximately $500,000.00.

9. It was further agreed between DJL and Plaintiff that Plaintiff would bill DJL and Israel at a discounted rate of $100.00 an hour for Plaintiff's time. It was also agreed that all costs incurred by Plaintiff would be paid for or reimbursed to Plaintiff by DJL. Subsequent to this Agreement being made, Israel withdrew from it. DJL confirmed that he would honor the Agreement and be responsible for all payments.

10. Plaintiff reasonably relied on the representations of DJL.

11. Plaintiff began work on all of the numerous Hillblom related matters and other personal matters as they arose for both DJL and ABL based upon the representations of payment by Defendant DJL.

12. All matters pertaining to Hillblom were directed to Plaintiff for handling by instructions/requests of DJL and were completed under his supervision, control, and review.

13. Plaintiff was instructed by DJL to review voluminous documents that pertained to the Hillblom matters. Further, Plaintiff was instructed by DJL to conduct extensive research into the many legal and factual issues surrounding the Hillblom matter. Plaintiff was required by DJL to travel to Guam, Saipan, California and the Philippines for Hillblom related matters and also had numerous meetings with DJL in Honolulu.

14. Plaintiff was instructed and required to perform services on all related Hillblom matters, including but not limited to the following cases:

> a. Hillbroom v. Lujan et. al., Civil No. CV 09-0841 ODW(C.D. CA);
>
> b. JLH Trust v. Lujan (HI), Civil No. 08-1-2071-10 KKS;
>
> c. JLH Pacific Trust v. David J. and Anna B. Lujan (HI), Civil No. 08-1-2071-10 KKS;
>
> d. Hillbroom v. Lujan (CNMI) CIVIL NO.: 10-00009;
>
> e. Hillbroom v. Israel (CNMI), Civil No. 10-00031;
>
> f. Calvo et. al. v. David J. and Anna B.Lujan (San Francisco (CA) Superior Court Case No. CGC-10-498299;

      g. Hillbroom v. PriceWaterhouseCoopers CA 004610 (Washington D.C.);

      h. Lujan v. Calvo (Guam) Civil No. CV0818-10.

At DJL's direction, supervision, and control, Plaintiff performed paralegal and consulting services on all of the above listed matters directly and on matters related to the various litigations. Plaintiff also testified as a witness on DJL and ABL's behalf in Calvo v. Lujan in the San Francisco (CA) Superior Court.

    15. Plaintiff also performed paralegal and consulting services for ABL in relationship to her various companies including but not limited to GRESCO Inc. and INOKO LLC. Plaintiff has never been compensated for his work or reimbursed the filing fees that he paid for on behalf of ABL and/or her companies. Further, ABL was also a beneficiary of SM's work on all of the Hillblom related matters as one of the claims therein was for the disgorgement of all funds received by DJL and disgorgement of all assets obtained with those funds. Upon information and belief, a portion of the attorneys' fees allegedly earned by DJL in the Hillblom matters were directly wired to ABL for her use and benefit, and other alleged earned attorneys' fees and other funds from the Hillblom matters were used to the benefit of ABL.

    16. Plaintiff would submit to DJL periodic invoices for his work on the Hillblom matters. DJL would make full and/or partial payments on the invoices. At no time did DJL ever dispute the accuracy or amount of the invoices. Not until December of 2012 did DJL ever raise a question as to the amount being billed to him and in December 2012 DJL's question was limited only to the amount of hours being billed for time Plaintiff spent during the five (5) to six (6) week trial in the Calvo v. Lujan matter in San Francisco.

    17. Over time, DJL fell behind in making payments towards the outstanding balance due and owing to Plaintiff for Hillblom related work. In this regard, DJL would make occasional payments but never enough to bring his account current. DJL continued to instruct and request that Plaintiff continue to do work on Hillblom matters despite the overdue balance.

    18. When Plaintiff would request payment on the outstanding balance, DJL would promise payment and request that Plaintiff trust him and that he (DJL) was then financially committed to other matters and Plaintiff had to be patient and that he would be paid as soon as funds were available. Plaintiff had personal knowledge that DJL had sufficient assets to eventually pay the outstanding balance. Further, on occasion, when Plaintiff would request payments on the outstanding balance, DJL would make a partial payment and continue to instruct Plaintiff to perform additional work on the various Hillblom related matters.

    19. During the course of the Agreement, Plaintiff was informed that DJL had made

large investments of capital in the Philippines and in ventures on Guam, including but not limited to the short-lived CW television station on Guam. DJL explained to SM on more than one occasion that he could not pay the outstanding amount owed to Plaintiff due to the fact that he needed to fund the CW television station, his other ventures in Guam and his ventures in the Philippines. DJL continued to request and direct SM to do work on his and ABL's various matters.

20. Again in 2010, Plaintiff was told by DJL that he could not pay the then outstanding balance owed to Plaintiff because he (DJL) was a major donor to various political campaigns and he estimated that he would be spending large sums of money on the campaigns. Yet, DJL reassured Plaintiff that he would be paid in full.

21. Plaintiff reasonably relied on DJL's representations that Plaintiff would be paid in full what was owed him.

22. Plaintiff was also instructed to and did in fact work closely with the various legal counsels' that were retained by DJL. They included: Ayabe Chong Nishimoto Nakamura & Sia (HI); Law Office of Eric Seitz (HI); Rey Quichocho (CNMI); Doron Weinberg (CA); Parker Shumaker Mills (CA); Gary M. Levitt (HI); Maria Erler (Penn) (HI); Calvo, Fisher & Jacob (Guam, CNMI, & CA); Ronald Crump (Washington D.C.), Michael Deaver (HI) and LAP.

23. Over time, a pattern began to appear to Plaintiff that DJL would hire various attorneys to assist on his cases. He would pay an initial retainer and then gradually fall behind in payments, just as he had done to Plaintiff. DJL would then make a payment of an amount sufficient enough to continue the working relationship, but not satisfying the outstanding balance.

24. In or around the latter part of 2012, Plaintiff began to seriously question DJL's representations that Plaintiff would be paid in full.

25. Further excuses were proffered by DJL to justify his failure to pay Plaintiff in full including but not limited to: the fees and costs that DJL owed to his various counsels'; mismanagement at GRESCO (a company owned and/or operated in part by ABL); and DJL's investments/obligations in the Philippines, including a Budget Rent-A-Car franchise.

26. In or about November 2012, prior to leaving Hawaii for an extended time to attend the trial of Calvo v. Lujan in San Francisco, Plaintiff had a conversation with DJL in which Plaintiff and DJL agreed that the outstanding balance due and owing to Plaintiff prior to the trial was over $106,300.00. This agreement was confirmed by subsequent memorandum in December 2012 that was never disputed or questioned by DJL. This agreement was reached as

Plaintiff had not billed DJL for an extensive period of time due to DJL's representations of his inability to pay.

27. In December of 2012, subsequent to agreement as to the $106,300 outstanding balance and Plaintiff's required attendance at the Calvo Trial in San Francisco, DJL did dispute the number of hours he was being billed for Plaintiff's participation/work during the Calvo v. Lujan trial. DJL did not dispute the fact that the work was performed but that simply how could Plaintiff bill him for 10 hours a day on trial days and 8 hours a day on non-trial days. Plaintiff was required to be in CA for several weeks from November 2012 to December 2012 and actually worked many more hours than were actually billed to DJL for the Calvo Trial.

28. During the course of the Calvo trial, Plaintiff's mother had an accident and became ill. She was hospitalized on Kauai. Plaintiff was informed that his mother would not survive her injuries much longer. Plaintiff requested to DJL if he could return to Hawaii to be with his dying mother. Plaintiff was already holding a return ticket to Honolulu paid for by DJL. DJL agreed but upon the condition that Plaintiff would have to return to San Francisco in a few days to testify and to continue to assist him and Doron Weinberg Esq. at the trial. Plaintiff agreed to return under DJL's conditions as he felt he had no choice and felt economically compelled.

29. Due to the dispute over the hours billed for the Calvo Trial, Plaintiff and DJL agreed that beginning January 1, 2013, Plaintiff would limit his hours on the Hillblom matters to no more than 25 hours per month. It was agreed between DJL and SM that there would be no requirement for an invoice. SM was to notify DJL when he had reached 25 hours and to stop working unless DJL specifically approved additional work. DJL made the $2,500.00 payment for January 2013, but no payment was made on the then outstanding balance.

30. In February 2013, Plaintiff requested from DJL his $2,500.00 payment for his February 2013 payment and for a payment towards the outstanding balance of now over $130,000.00. In response, DJL made an $8,000.00 payment and a subsequent $7,000.00 payment to Plaintiff both through a Guam company named DNA, Inc. to be applied towards the outstanding balance.

31. However, no payment was received for the February 2013 hours despite DJL being informed that Plaintiff had reached the twenty-five hour limit. When Plaintiff brought this to DJL's attention, DJL became upset and stated that he had made a $15,000.00 payment and that was all Plaintiff was going to receive for now.

32. Plaintiff continued to perform work on Hillblom matters at DJL's request through

6

March, April, and May of 2013 although on a limited basis since no payments were being made by DJL. However, despite his failure to make further payment, DJL continued instruct Plaintiff to perform work on the Hillblom matters and became agitated when Plaintiff refused to comply.

33. Despite numerous demands for payment, DJL has failed and refused to make payment while acknowledging and confirming his agreements with Plaintiff.

34. Pursuant to HRS 388-1, Plaintiff was an employee of the Defendants' and received wages pursuant to the definitions in Chapter 388.

35. The Defendants' have refused to pay wages due and owing to Plaintiff including those wages that are undisputed in violation of HRS 388-5.

36. The Defendants' have wrongfully retained Plaintiff's wages in violation of HRS 388-6.

**IV.    CAUSES OF ACTION**

COUNT I

(BREACH OF CONTRACT)

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 36 as if said paragraphs were fully set forth herein.

38. In performing the acts described above, Defendant DJL breached the Engagement Agreement with Plaintiff by, inter alia, failing to pay monies due and owing to Plaintiff for work performed at Defendant DJL's instruction and request.

39. In performing the acts described above, Defendant ABL breached her agreement with Plaintiff to compensate him for his work performed on her behalf and to reimburse Plaintiff for his expenses including but not limited filing fees.

40. As a direct and proximate result of Defendants' breach of contract, Plaintiff has been damaged in an amount to be shown at trial.

COUNT II

(BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING)

41. Plaintiff realleges and incorporates by reference paragraphs 1 through 40 as if said paragraphs were fully set forth herein.

42. In performing the acts set forth above, Defendants have breached the covenant of good faith and fair dealing implied in contracts, and is therefore liable for bad faith.

43. As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff has suffered and will continue to suffer damages in an amount to

proven at trial.

## COUNT III
### (UNJUST ENRICHMENT)

44. Plaintiff realleges and incorporates by reference paragraphs 1 through 43 as if said paragraphs were fully set forth herein.

45. In performing the acts set forth above, Defendants' have been unjustly enriched to the detriment of Plaintiff and thus Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT IV
### (CONVERSION)

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as if said paragraphs were fully set forth herein.

47. In performing the acts set forth above, Defendants have converted for their own use, benefit and purpose Plaintiff's work product without compensation.

48. As a result, Defendants are liable to Plaintiff for Conversion and Plaintiff has incurred damages in an amount to be shown at trial.

## COUNT V
### (FRAUD IN THE INDUCEMENT)

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 48 as if said paragraphs were fully set forth herein.

50. Based upon the factual allegations as specifically set forth herein, Defendant DJL committed fraud in the inducement by misrepresenting to Plaintiff that i) Plaintiff would be paid $100.00 per-hour for his paralegal/consulting services performed on behalf of the Defendants and ii) subsequently, that Plaintiff's outstanding invoices for the services he had performed would be paid in full.

51. DJL made the false representations with the knowledge of its falsity and in contemplation of the Plaintiff's reliance on the false representation.

52. The Plaintiff reasonably and justifiably relied on the false representation, and but for those representation, Plaintiff would not have agreed and/or continued to perform services for the Defendants.

53. DJL's fraud in the inducement was a legal cause of substantial damages to the Plaintiff.

54. DJL is liable to the Plaintiff for damages in an amount to be proven at trial.

55. In performing all the acts described above, Defendant DJL acted wantonly, oppressively, or with such malice as implies such spirit of mischief or criminal indifference to civil obligations and/or with such willful misconduct and that entire want of care which creates the presumption of a conscious indifference to the consequences, and is therefore liable to Plaintiff for punitive damages in an amount to be shown at trial.

## COUNT V
## (FRAUD)

56. Plaintiff realleges and incorporates by reference paragraphs 1 through 55 as if said paragraphs were fully set forth herein.

57. Based upon the factual allegations as specifically set forth herein, Defendant DJL committed fraud by misrepresenting and continuing to promise Plaintiff that Plaintiff's outstanding invoices for the services and work he had performed would be paid in full.

58. DJL's representations were false and DJL made the false representations with the knowledge of their falsity and in contemplation of the Plaintiff's reliance on the false representations and to induce Plaintiff to continue to perform services for the Defendants.

59. The Plaintiff reasonably and justifiably relied on the false representation, and but for those representation, Plaintiff would not have continued to perform services for the Defendants.

60. DJL's fraud was a legal cause of substantial damages to the Plaintiff.

61. DJL is liable to the Plaintiff for damages in an amount to be proven at trial.

62. In performing all the acts described above, Defendant DJL acted wantonly, oppressively, or with such malice as implies such spirit of mischief or criminal indifference to civil obligations and/or with such willful misconduct and that entire want of care which creates the presumption of a conscious indifference to the consequences, and is therefore liable to Plaintiff for punitive damages in an amount to be shown at trial.

## COUNT VI
### (NEGLIGENT AND/OR INTENTIONAL MISREPRESENTATION)

63. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 as if said paragraphs were fully set forth herein.

64. Based upon the factual allegations as specifically set forth herein, including but not limited to: 1) that Plaintiff would be paid $100.00 per-hour for his paralegal/consulting services performed on behalf of the Defendants and 2) subsequently, that Plaintiff's outstanding invoices for the services he had performed would be paid in full, constitutes negligent and/or intentional misrepresentation.

65. In making the above representations Defendants' failed to exercise reasonable care and/or intentionally misled the Plaintiff.

66. Plaintiff reasonably and justifiably relied on Defendants' negligent and/or intentional misrepresentations as set forth above, and but for those representation, Plaintiff would not have 1) agreed to perform services for the Defendants and 2) continued to accept subsequent work assignments from and/for the Defendants'.

67. Defendants' negligent and/or intentional misrepresentations were legal causes of substantial damages to the Plaintiff.

68. As a result, Defendants' are liable to the Plaintiff for damages in an amount to be proven at trial.

69. In performing the intentional acts described above, Defendants' acted wantonly, oppressively, or with such malice as implies such spirit of mischief or criminal indifference to civil obligations and/or with such willful misconduct and that entire want of care which creates the presumption of a conscious indifference to the consequences, and is therefore liable to Plaintiff for punitive damages in an amount to be shown at trial.

## COUNT VII
### VIOLATION OF HRS CHAPTER 388

70. Plaintiff realleges and incorporates by reference paragraphs 1 through 69 as if said paragraphs were fully set forth herein.

71. Pursuant to HRS 388-1, Plaintiff was an employee of the Defendants and received

10

wages pursuant to the definitions contained in that Chapter.

72. The Defendants' have refused to pay wages due and owing to the Plaintiff including those that are undisputed in violation of HRS 388-5.

73. As a result, Defendants' have wrongfully retained Plaintiff's wages in violation of HRS 388-6 and are liable to Plaintiff for damages pursuant to and as set forth in HRS 388-10.

## COUNT VIII
## PROMISSORY ESTOPPEL

74. Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as if said paragraphs were fully set forth herein.

75. Defendant DJL made specific promises to Plaintiff that 1) Plaintiff would be paid $100.00 per-hour for his paralegal/consulting services performed on behalf of the Defendants and 2) Plaintiff's outstanding invoices for the services he had performed would be paid in full.

76. At the time Defendant DJL made the promises, he foresaw that the Plaintiff would rely upon his promises.

77. The Plaintiff did in fact rely upon Defendant DJL's promises and performed services for the Defendants.

78. Enforcement of Defendant DJL's promises is necessary to avoid injustice.

79. As a result, Plaintiff is entitled to damages in an amount to be proved at trial.

## COUNT IX
## INTENTIONAL AND/OR NEGLIGENT
## INFLICTION OF EMOTIONAL DISTRESS

80. Plaintiff realleges and incorporates by reference paragraphs 1 through 79 as if said paragraphs were fully set forth herein.

81. In performing the acts described above, the Defendants negligently and/or intentionally inflicted severe emotional distress upon the Plaintiff.

82. As a result of the Defendants' negligent and/or intentional infliction of severe emotional distress, the Plaintiff is entitled to damages in an amount to proven at trial.

## COUNT X

## QUANTUM MERUIT

83. Plaintiff realleges and incorporates by reference paragraphs 1 through 82 as if said paragraphs were fully set forth herein.

84. As set forth herein, the Plaintiff performed paralegal/consulting services at the direction of Defendant DJL.

85. The Defendants' derived a benefit from the services performed by Plaintiff.

86. As a result, the Plaintiff is entitled to recover the value of his services pursuant to quantum meruit.

V.     **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Stacy Moniz requests relief against the Defendants DAVID J. LUJAN and ANNA B. LUJAN, jointly and severally as follows:

A.     For damages in an amount to be determined at trial, including but not limited to general, special and consequential damages;

B.     For exemplary and punitive damages;

C.     For reasonable attorneys' fees, costs, statutory attorneys' commissions, expenses, pre-judgment and post-judgment interest; and

D.     For any other equitable or legal relief that this Court deems just and under the circumstances.

DATED: Honolulu, Hawaii, September 3, 2014.

_____
STACY MONIZ
Plaintiff Pro Se

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| STACY MONIZ, | ) | Civil No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVID J. LUJAN, ANNA B. LUJAN, | ) | SUMMONS |
| AND DOE DEFENDANTS 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

SUMMONS

STATE OF HAWAII

TO THE ABOVE-NAMED DEFENDANT(S):

You are hereby summoned and required to file with the court and serve upon Plaintiffs', whose addresses are stated above, an answer to the Complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the ~~First Amended~~ Complaint.

THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.

A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF

DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.

DATED: Honolulu, Hawaii, __SEP - 4 2014__, 2014

_____
CLERK OF THE ABOVE-ENTITLED COURT